U.S. v. Roofs has been submitted. PG&E v. Elliott Management Corporation is also submitted. PG&E v. Public Employers Retirement Association of New Mexico's submission is deferred. And we will take up Saloojas v. Aetna. So, Mr. Gabriel, you may proceed. Yes, Your Honor. Thank you. Michael N. Gabriel for the plaintiff. I'd like to reserve five minutes for rebuttal. All right. Okay. Now, I'm familiar with the case law on this issue, which, of course, deals with whether or not there's an implied right to sue under the CARES Act. And I believe that this really is a case of first impression for three different reasons. The CARES Act is a law which was intended for the preservation of life versus the preservation of a quality of life. If cases decided on this issue up to this point deal with the payment of money, such as in court in Alexander, but the underlying law involved was not a safety issue. The CARES Act was designed specifically, as stated by the intent of Congress, to promote and give a means of accelerating medical treatment for COVID testing during a pandemic. This, the payment of money... Can I ask you a question? It's about the court factor consistent with legislative scheme. So I think we all agree the legislative scheme is to make COVID testing widespread, make it widely available. And so I am wondering how paying you the full or your client the full publicly listed price is consistent with that. The amicus brief cited a New York Times article saying that the Medicare rate for COVID test is $41. You've received whatever payment or your client has from Aetna for it's Aetna's insured. I assume you got from your document ER 35, the $90 you charge for the collection of a COVID no swab. But then in addition, you're asking for, from what I can tell, an additional $1,000 and punitive damages up to, I don't know if that's a total of 2,500 or that's on top of the 1,000. And I'm just looking at your charges for every test. You want $85 for COVID protective equipment, PPE, $364 services at urgent care, $385 if you're an established patient, that's the doctor visit code, and $383 for a new patient doctor visit. So I'm just wondering how is charging this additional amount when Medicare is reimbursing $41, how is that really promoting or facilitating the widespread provision of COVID testing? How is that consistent with the legislative scheme? And this is per test. These prices are per test. So do you want to talk about that? How is that? I mean, I guess you have doctors doing the no swabs and not anyone else who might feel at a lower rate or you're requiring an urgent care visit for every no swab. Tell us about the remedies you're requesting and how that's consistent with the legislative scheme, please. Yes, very much so. The biggest reason that we're looking at here is we're in network with Medicare. When you're in network with Medicare, you agree to take, and when you're in network with anyone, any doctor or insurance company, you take the amounts that are charged, that are agreed to for the payment in exchange for getting referrals to make up the difference. So when Medicare, the charges that we get through Medicare are the amounts that we've agreed with Medicare in order to take the Medicare client. With Aetna and the other insurance companies, we're not in network with them. We don't get referrals. Their people come in and use us and we're charging the normal rate because this is a normal service. Now, the charges that they're getting, for example, the urgent care bill, that was a separate one. If somebody already makes an appointment, then they don't get charged that. But when they come in off the street, we have a separate line to deal with the emergency cases, the cases that come in to that because that's a whole different line. So it's not, so if they make an appointment, they don't get charged that because they're not, that's the best way to say it is that's a feature that's not in with the insurance companies that are in network. Their doctors, when you go to a doctor in network, you don't make the appointment, they don't see you. We see everybody, but we have a separate line and we charge for that if they're not making the appointment to come in. So to get a COVID nose swab with your client, you have to see a doctor and they have to get new protective PPE for every patient. Of $85. Yes, that's disposable, it's not reused when somebody comes in, they see a doctor, they're not just seeing, they're not just buying a kit off of a, like a Costco. I don't have Costco back there, but they're seeing a doctor, they're getting a doctor's visit and the doctor is, and the medical nurse practitioner is taking their medical. And then they're deciding if the test itself is good for them, not always. It is, there've been a few instances where the test was not ordered because they had the medical background indicated. This is the same situation. Council, you mentioned that this is an issue of first impression in terms of construing the statute. Multiple district courts across the country have taken a look at this and every single one has gone against you. Do you have any cases addressing this statute from a district court anywhere in the country? I just want to make sure that we didn't miss anything. No, that's the whole point. There's never been a case anywhere in an applied right where the underlying statute was one of safety as opposed to what I consider quality of life. But they weren't enforcing, it didn't evolve from a case in which was primarily intended to save lives. That is an issue here for that purpose. It may affect the intent of what Congress intended to do, but they've never done before. The issue again is, as I said before, there were three different ways that I viewed this case as being of first impression. The second one is the fact that there are parties involved. There's three parties. Normally in a statute, there's two. You've got the patient, you've got the insurance company, and you've got the doctor, the provider. The doctor is either a party or a third party beneficiary because he is required to treat the patient and not bill the patient and bill the insurance company. So he's being, and that goes into my thought of perhaps the third issue is, did the government intend to be the guarantor of the payment or merely or make it clear that the insurance company should pay? Because under the CARES Act, the doctor has to provide the service and cannot bill the patient. So if the insurance company is not being paid because, as all of the district courts have said up to this point, payment must come through the government. If the government doesn't pay, then is that not a violation of the Constitution for, as a taking perhaps, or involuntary servitude in some fashion, money is being owed by, as stated in Congress, whatever the amount, is not being paid because Congress is not enforcing the act that Congress passed. Again, these are issues that no court has dealt with up to this point. And this is the clarification, I suppose, that the Supreme Court has given. Well, except for the district courts that have dealt with this, have all uniformly held that the CARES Act does not carry with it an implied private right of action to enforce its terms, right? And that's the holding that you want us to hold today, right? That there is a private right of action in this case. Yes, I do. And again, as I say, you're absolutely correct. The district courts have held that this is basically a quality of life determination of the payment of money. We think it's supposed to code, the CARES Act is not a quality of life section of code. It's a preservation of life statute. It's one that is actually there intended to preserve life. Could I ask a question? It seems like the law has put you in a difficult position because it's requiring that the statutory text include rights creating language for an implied private right of action. So it almost seems impossible, right? Because if the statute had explicit language, then you would have an actual right of action, you wouldn't have to have an implied one. And yet the law now requires for an implied one that you have statutory text that has rights creating language. How can rights creating language even be an implied right? Do you think there's some inconsistency there that makes it difficult for your situation? Well, it makes it extremely difficult because I'll be quite honest. I never thought that there was an issue over being able to sue to enforce the payment because the statute of CARES Act is clear that my doctor has to provide the service and the insurance company has to pay. What we're arguing now is who's responsible for enforcing it in a situation where there's no question the insurance company has to pay. The question is who brings the suit to enforce it. That does not seem to be the intent of Congress when the major overall intent was to make sure people had access to medical care. Once we're in court, the issue of overcharging or anything, that's in front of the judge. We're not even at that stage because we can't get in court because Congress said they have to pay, but we're trying to figure out how do you get in court? Yes, we're in this issue here. We're going around in circles. In the meantime, the purpose of the CARES Act was to get medical care for people wanting treatment. If doctors are not going to get paid, which is the case in my case for my doctor, we've got over 30,000 cases from not just this insurance, Aetna, but all of them in which he hasn't been paid or fully paid and have been on the verge of bankruptcy. It's a very important issue. I don't know what else to say beyond that. I think that I do believe... I'm sorry. Do you want to reserve some time for rebuttal? Yes. Thank you. Thank you. Always something. Can you hear me okay? Yes. Good morning. May it please the court, my name is Emily Costin, and I represent the defendant, Apali, in this case, at Health of California. I think it's clear from the court's questioning already this morning that the question really here is not whether or not there is an express private right of action, but whether there is an implied private right of action under the CARES Act. And the case law in the Ninth Circuit, the case law from the Supreme Court, is very clear that this is an incredibly tall order that Seleucus is asking the court to imply here. Essentially what the appellant is asking the court to do is to read into the statute something that Congress did not write into the statute. I thought I would just start very briefly with some of the latest developments that have occurred since our briefing, including a development as late as last Thursday. On February 9th, yet another district court in the Northern District of California, Judge Tiger, also joined Judge Corley and Judge Chesney and Judge Breyer in finding that there is no implied private right of action under the CARES Act. I don't even have a Lexis site for that, but for the benefit of the court, that's case 422, CV 03269. Judge Tiger just recently held that it is well established that there is no implied private right of action under the CARES Act. I think to Judge McGinn's point, this is now yet another district court that has held no implied private right, and we are not aware of any court that has held there is, in fact, an implied private right. Prior to today, or prior to this month, the only case initially determining that there was an implied private right of action is the case that my opposing counsel relied on heavily in his briefing, the diagnostic affiliates case against United in the Southern District of Texas. But just two weeks ago, the judge in that case overturned her prior decision and disavowed her prior analysis and joined the other courts in finding that, again, there is no implied private right of action under the CARES Act. At this point, Your Honors, there is absolutely no split of authority. You are correct that this is an issue of first impression for the circuit courts of appeal, but it is certainly not an issue of first impression among the district courts. There are now at least four judges in the Northern District, as well as the District of Connecticut, the District of Minnesota, and the Southern District of Texas, all in agreement that there is no implied private right here. Would you agree that the law is sort of inherently in tension? It's saying for an implied right, you still have to have rights-creating language in the statutory text. It just seems like there's an inconsistency or a tension there.  Sure. So, I mean, understand of all the language of the statute must include both rights-creating language and some indication of an intent to provide for a remedy. And it's both of those things, right? So it's not just the rights-creating language. You know, the issue here is that the language in the statute doesn't create a right in favor of providers. It's a regulation on the plans and the health insurance companies to pay. But setting that aside, whether or not there's a right implied or not, the issue is that there is no language at all that suggests any kind of remedy or that Congress intended to provide any kind of remedy. And, you know, what that language looks like is— But what if the statute really clearly had rights-creating language? Really clearly. You would say it still couldn't create a right if it was violated because it didn't spell out a remedy? Under Sandoval, no. And, I mean, hypothetically, what that would look like, really clearly rights-creating language. We have looked at the Ninth Circuit's cases post-Sandoval, and more than 80% of the cases the Ninth Circuit has found no implied private right of action. The only cases that we have been able to find in which this Court has held an implied private right has included language that is targeted at the individual. So no person shall be subject to discrimination. There are some cases that have held that implies a private right of action to an individual. The only other cases that we have been able to find have included something that suggests that there is a remedy. Have those cases with explicit rights-creating language not included—have any of them not included a remedy, but an implied right was still found? Repeat that question again. I'm not sure I heard that. Are there any cases in which there was explicit or very strong or clear rights-creating language in the statutory text, but no remedy was provided—no remedy was specified if that right was violated? I'm not sure of the answer to that question, but I am sure of the fact that under the little man, the Court has—this Court has suggested that under Sandoval, there must be something more about the remedy. So there must be something that Congress has said that suggests that the statute should be enforced by private litigants and private litigation. So, for example, there is a case coming from the Ninth Circuit, the Ray Charles Foundation case, which includes something more to suggest that even if there is a right, that there has to be some sort of indication of a remedy. And in that case, there was an indication reference to enforcing in a court of competent authority, something along those lines that suggests that Congress wanted these rights to be enforced in a court of law. And that's just not present here. What we have here is Congress passed the FFCRA, and within the FFCRA, bestowed the enforcement authority to the secretaries of HHS, Labor, and Treasury. And that is very clear. They bestowed both enforcement authority of 6001, as well as the implementing authority to implement regulations and to regulate that. And when the CARES Act came along a couple weeks later, Section 3202 of the CARES Act amended 6001 of the FFCRA. So what that means is that the FFCRA enforcement authority that is given to the departments carries over to this provision of 3202 that we're talking about here today. And, in fact, the departments have issued guidelines. These are available on the CMS website. They are FAQs that the departments have interpreted the authority vested to them under the CARES Act and under the FFCRA, as carrying with it authority to enforce this provision of Section 3202 of CARES. So they have issued this guidance that they are essentially embracing that authority. Whether or not the departments have done anything with that, whether they have enforced it, whether they have provided any further guidance, that's not the issue that should guide the Court's decision here. So the Court's decision here really should focus on whether or not the text of the statute conveys an implied private right of action. And it simply just does not here. The last point I simply wanted to make, I'm happy to take further questions from the Court, but I just wanted to address this last point that Mr. Gabriel made during his opening remarks about sort of this concept of fairness and this concept that if his client isn't able to enforce this provision of the CARES Act through a private right under CARES, that somehow his client is going to be left out without any sort of remedy. First of all, the Sandoval Court made clear that that's not for this Court to consider. If a cause of action does not exist under the statute, courts may not create a cause of action, no matter how desirable is a policy matter or no matter how desirable is a matter of fairness. And, in fact, that's one of the issues that the Diagnostic Affiliates Court got wrong in the first instance. The Court didn't focus on congressional intent, but instead focused on sort of creating a mechanism to remedy what I think she felt was a gap in the statute. And that's actually expressly what Sandoval cautions against doing. Sandoval says if the congressional intent is silent, then there is no implied private right of action. So I would urge the Court to understand that whether an appellant has or does not have any sort of alternative remedy to remedy this dispute that he perceives with Aetna, that issue is not before the Court today. So the issue before the Court today is simply whether or not the text of this statute implies a private right of action. I will note, however, that several of the district courts, I'm sure the Court has read those other district court opinions, that there are other mechanisms that the district courts have conveyed are possible options, including enforcement through the departments, through the secretaries, as well as options under ERISA and under state law. I'm happy to take any other questions the Court may have. Are there any further questions? I don't have any questions. Thank you. No, thank you. We'll rest on our papers. Thank you very much. Thank you. Thank you, counsel. Mr. Gabriel? Yes, Your Honor. Really quickly here. The issue here in this case is, is there an implied right to sue? And by the very definition of implied, meaning it's not expressed. So the issue then becomes, what do you need in the statute that shows an intent on the part of Congress to infer that the statute should be enforced through an implied right? And the only thing I can look at to that is what the Congress intended, which was to save lives through the creation of a program to allow people to get COVID testing without the fear of monetary repercussions that may preclude it. So an implied right is exactly the kind of remedy which would have been implied by Congress when they wrote the statute. That's basically all I can say is I believe that this is a classic implied right situation. So thank you, Your Honor. All right. Thank you very much, counsel. Saluhas v. Aetna Health of California will be submitted. And this session of the court is adjourned for today. All rise. The court for this session stands adjourned.
judges: WARDLAW, NGUYEN, KOH